_____

|

YVETTE JONES,                                                    | Case No. 1:09-cv-392

|

Plaintiff,                                           | Chief Judge Paul L. Maloney

|

v.                                              | Magistrate Judge Scoville

|

GEORGE PRAMSTALLER,                                |
Director of Health Care Services,                          |
NANCY MARTIN,                                           |
Coordinator of Health Care Services Risk Management,[1]    |

|

MICHAEL WILKINSON, Registered Nurse,               |
TAMERLA HAMILTON, Registered Nurse,                |
RENEE A. VANHOUTEN, Registered Nurse,              |
DAVID VAN ARSDALE, Registered Nurse,               |
SHERRI CASTENHOLTZ, Registered Nurse,[2]           |

|

CORRECTIONAL MEDICAL SERVICES, INC.,               |
A Foreign Corporation, and                               |
CRAIG HUTCHINSON,                                      |
Director of Correctional Medical Services, Inc.,             |

|

Defendants.                                         |

|

_____

_____

[1]

    Today's opinion dismisses all claims against two defendants:  Mary Berghuis (the warden of MDOC's Ernest Brooks Correctional Facility) and Douglas Straub (MDOC's Deputy Director of Correctional Facilities Administration).  Accordingly, they are no longer listed in the caption.

[2]

    Registered Nurse Kathleen Salazar, who allegedly was an MDOC or CMS employee working at the plaintiff's prison at the time of events in question, has not been served with the summons and complaint.  Accordingly, this court has not acquired jurisdiction over her.  She will not be listed in the caption until and unless the plaintiff submits proof of valid, timely service.

# AMENDED[*] OPINION and ORDER

**Granting in Part and Denying in Part the Rule 12(c) Motion for Judgment on the Pleadings:**

<u>Granting Rule 12(c) Motion as to Eighth Amendment Claims (Counts 1 and 2) against 2 Defendants:</u>
Berghuis (Warden) and Straub (Deputy Director of Corr. Facil. Admin.)

<u>Denying Rule 12(c) Motion as to Eighth Amendment Claims (Counts 1 and 2) against 2 Defendants:</u>
Martin (Coordinator of HealthCare Services Risk Management) and Pramsteller (Director of Health Care)

<u>Granting Rule 12(c) Motion as to Gross Negligence Claim (Count 3) against 3 Defendants:</u>
Berghuis (Warden), Straub (Deputy Director of Corr. Facil. Admin.), and Pramsteller (Director of Health Care)

<u>Denying Rule 12(c) Motion as to Gross Negligence Claim (Count 3) against 1 Defendant:</u>
Martin (Coordinator of HealthCare Services Risk Management)

<u>Dismissing Defendants Berghuis and Straub from the Case</u>

**Denying without Prejudice the Motion for Summary Judgment on Ground of Qualified Immunity:**
Permitting the Remaining Parties to File Summary-Judgment Motions After Completion of All Discovery

This action arises out of the September 2007 death of Mr. Raymond Jones while incarcerated at the Michigan Department of Corrections ("MDOC")'s Ernest Brooks Correctional Facility in Muskegon, Michigan ("the prison"). *See* Complaint filed April 28, 2009 ("Comp") ¶ 8. In May 2008, the Probate Court for Calhoun County, Michigan appointed Yvette Jones personal representative of the estate of Mr. Jones ("Jones"). *See* Comp ¶ 6. Represented by counsel, Ms. Jones initiated this civil-rights action under 42 U.S.C. § 1983 in April 2009, claiming that the defendants demonstrated deliberate indifference to the decedent's known serious medical need in violation of his Eighth Amendment right to be free of cruel and unusual punishment.

Count one asserts a section 1983 Eighth Amendment claim against the defendants directly.

---

[*] This Opinion is identical to the one issued December 17, 2009, except as follows:

Footnote 7's first sentence originally read, "As to defendant Pramstaller, only count 3 (gross negligence) remains." That was erroneous, as Count 3 was dismissed as to Defendant Pramstaller. As footnote 7 now clarifies, counts 1 and 2 remain against Pramstaller.

*See* Comp ¶¶ 43-55. Count two asserts a section 1983 Eighth Amendment claim for failure to train, failure to supervise, failure to implement protocols consistent with those of the National Commission on Correctional Health Standards, failing to develop and implement a policy for testing/diagnosing/isolating/treating inmates with contagious diseases, failing to maintain a clean prison with adequate ventilation, and finally, maintaining a policy of treating prisoners who complained of pain or sickness as malingerers undeserving of medical care and withholding such care "unless imminent death is absolutely apparent." *See* Comp ¶¶ 56-63. Count three asserts a claim of gross negligence and recklessness under Michigan common law. *See* Comp ¶¶ 64-73. This court has uncontested federal-question jurisdiction under 28 U.S.C. § 1331, and the defendants have not contested the propriety of venue in this district under 28 U.S.C. § 1391. *See* Comp ¶¶ 2-3.

**Jones sues Correctional Medical Services, Inc. ("CMS")**, which provides health-care to MDOC prisoners under contract with the State of Michigan, and its Director Craig Hutchinson ("Hutchinson"), *see* Comp ¶¶ 9-10. CMS and Hutchinson jointly filed an answer and affirmative defenses on June 5, 2009, *see* Docs. 9 and 10. Jones answered CMS/Hutchinson's defenses on June 19, 2009, *see* Doc. 16. CMS and Hutchinson have not yet filed a dispositive motion.

**Jones also sues ten MDOC employees:** prison warden Mary Berghuis ("Berghuis"), Correctional Facilities Administration Deputy Director Douglas Straub ("Straub"), Director of Health Care Services George Pramstaller ("Pramstaller"), Coordinator of Health Care Services Risk Management Nancy Martin ("Martin"), and Registered Nurses Kathleen Salazar ("Salazar"), Michael Wilkinson ("Wilkinson"), Tamerla Hamilton ("Hamilton"), Renee A. VanHouten ("VanHouten"), David VanArsdale ("Van Arsdale"), and Sherri Castenholtz ("Castenholtz"), *see* Comp ¶¶ 11-20. It appears that all MDOC defendants were validly served with the summons and

complaint except Nurse Salazar, *see* Docs. 2-4, and all MDOC defendants except Nurse Salazar timely filed an answer and affirmative defenses on May 29, 2009, *see* Doc. 6. Jones responded to the MDOC Defendants' answer and affirmative defenses on June 19, 2009, *see* Doc. 15. The five nurses have not yet filed a dispositive motion.

On June 17, 2009, four of the nine served MDOC Defendants – Warden Berghuis, Pramstaller, Deputy Director Straub, and Healthcare Coordinator Martin – filed a FED. R. CIV. P. 12(c) motion for judgment on the pleadings and/or a FED. R. CIV. P. 56 motion for summary judgment on the ground of qualified immunity, *see* Docs. 13 (motion) and 14(brief). On July 15, 2009, Jones timely filed an opposition brief, *see* Doc. 25. The Court heard oral argument on November 9, 2009.

For the reasons that follow, the court will grant in part and deny the motion for judgment on the pleadings. Two of the moving defendants will be dismissed from the case, warden Berghuis and deputy director Straub. The other two moving defendants, HealthCare Director Pramstaller and HealthCare Coordinator Martin, remain in the case. The court will deny without prejudice these defendants' motion for summary judgment on the ground of qualified immunity, in order to afford Jones a more complete opportunity for discovery.

## LEGAL STANDARD:
## JUDGMENT ON THE PLEADINGS

"It is well settled that a court must review a Rule 12(c) motion under the same standard applicable to a Rule 12(b)(6) motion [to dismiss for failure to state a claim on which relief can be granted]." *Zeigler v. Mieskiewicz*, 2008 WL 650335, *2 (S.D. Ohio Mar. 5, 2008) (citing *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007)); *see also In re Wells*, 2009 WL 2169217, *1 (N.D. Ohio

Bankr. July 15, 2009) (Mary Ann Whipple, Bankr. J.) ("The proper standard for deciding a Rule 12(c) motion is the same as for a motion pursuant to FED. R. CIV. P. 12(b)(6).") (citing *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (Guy, Rogers, McKeague)).[3]

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) turns on legal issues, not an assessment of the evidence. *Technology Recycling Corp. v. City of Taylor*, 186 F. App'x 624, 640 n.5 (6th Cir. 2006) (Griffin, J.); *see also Thomas v. Arn*, 474 U.S. 140, 150 n.8 (1985) ("[M]otions for judgment on the pleadings and dismissal for failure to state a claim on which relief can be granted . . . consist exclusively of issues of law."). A Rule 12(c) motion is simply one permissible avenue for contending that the complaint should be dismissed because it fails to state a claim on which relief can be granted. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006) ("a defense of failure to state a claim . . . may be made in any pleading . . . or by motion for judgment on the pleadings, or at the trial . . . .") (quoting FED. R. CIV. P. 12(h)(6)).

"Like a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings 'presume[s] as a legal matter the lack of any need for an evidentiary hearing . . . .'" *Castleberry v. Neumann Law, P.C.*, 2008 WL 5744179, *6 (W.D. Mich. July 9, 2008) (quoting *US v. Raddatz*, 447 U.S. 667, 693-94 (1980)). Indeed, on a Rule 12(c) motion, the court must accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the non-moving party, in this case the plaintiff. *See Technology Recycling*, 186 F. App'x at 640 n.5 (citing *PONI v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005)); *see also Ziegler v.*

---

[3]

*Cf. Streater v. Cox*, – F. App'x –, –, 2009 WL 1872471, *3 (6th Cir. June 30, 2009) (Kethledge, White, D.J. Polster) ("We read the *Twombley* and *Erickson* decisions together when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim *or* a motion for judgment on the pleadings . . . .") (emphasis added).

*IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); 2 MOORE'S FEDERAL PRACTICE § 12.34[1][b] (Matthew Bender 3d ed. 2003). But the court need not draw unwarranted factual inferences or accept the plaintiff's *legal* conclusions, *Bohanan*, – F. App'x at –, 2008 WL 215749 at *1 (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)), even where a legal conclusion is "couched as a factual allegation." *National Fair Hsg. Alliance v. Town & Country - Sterling Hts.*, 2009 WL 174367, *2 (E.D. Mich. Jan. 26, 2009) (Steven J. Murphy III, J.) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). And each claim's factual allegations must *plausibly* suggest a viable claim; the claim must be plausible and not merely conceivable. *Twombly*, – U.S. at –, 127 S.Ct. at 1974.

When considering whether to grant a Rule 12(c) or 12(b)(6) motion, the court primarily considers the complaint's allegations, but may also take into account items appearing in the record and attached exhibits. *LaFace Records, LLC v. Does 1-5*, 2008 WL 513508, *3 (W.D. Mich. Feb. 22, 2008) (Maloney, J.) (citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)). The court may also consider any other items "of public record" without converting the motion into one for summary judgment. *See Barany-Snyder v. Weiner*, 539 F.23d 327, 332 (6th Cir. 2008) (<u>Gibbons</u>, Sutton, D.N.J. D.J. Ackerman) (citing *Amini*, 259 F.3d at 502).

## DISCUSSION:
## JUDGMENT ON THE PLEADINGS

Jones was sentenced to a term of imprisonment of 8 to 20 years in December 2006 and was sent to serve that sentence at MDOC's Brooks prison in Muskegon. *See* Comp ¶¶ 22-23. On about August 29, 2007, Jones, then 32 years old, began to report to Nurse Salazar that he was experiencing abnormal dizziness whenever he closed his eyes. That same day, Nurse Wilkinson saw Jones for

an unscheduled Health Service visit, where Jones complained that he felt dizzy whenever he turned his head, rubbed his eyes, or moved from a lying position to a standing position. *See* Comp ¶¶ 24-25. Three days later, on September 1, Jones submitted a written request for medical care, which Nurse Hamilton designated as "urgent" based on his complaints about his vision and his eyes. *See* Comp ¶ 26. The next day, on September 2, Jones told Nurse VanHouten that he was experiencing double vision. *See* Comp ¶ 27. Three days later, on September 5, 2007, "custody staff" informed Nurse Salazar that Jones had repeatedly requested medical care for his progressively worsening vision symptoms. *See* Comp ¶ 28.

On September 6, Nurse Van Arsdale noted that Jones had a ten-day history of worsening double vision, abnormal sensitivity to light, and dizziness, and had lost fourteen pounds in only four days. *See* Comp ¶ 29. On September 7, Nurse Hamilton documented Jones's complaints of increased dizziness when standing, disequilibrium, inability to walk, nausea when swallowing, numbness and tingling in the face, and blindness in the right eye. *See* Comp ¶ 30. On Saturday, September 8, Nurse Castenholtz documented that Jones was unable to walk due to dizziness, had been vomiting twice daily since the previous day, was unable to eat, was unable to see without squinting, and was sitting "slouched in a wheelchair with little verbal communication." Comp ¶ 31. On Sunday, September 9, Nurse Wilkinson noted that Jones was now confined to a wheelchair and was still complaining of double vision. Comp ¶ 32.

On Monday, September 10, inmates contacted family members outside the prison and reported that Jones's condition was rapidly deteriorating and he needed medical attention. *See* Comp ¶ 37. At 8:01 a.m., someone named Doug Tjapkes sent the following e-mail to Penny Ryder of the American Friends Service Committee ("AFSC"):

> Penny, I have been alerted by some reliable people and good friends that a prisoner in Brooks in Muskegon is failing fast. His name is Raymond Jones, #313552.
>
> According to an inmate who can be trusted, Mr. Jones has been losing control of his muscles, his eyes roll back in his head, and now he's in a wheelchair because he can no longer walk. Yet, he returns from the nurse with Motrin.
>
> I have taken steps to get him to sign a release so that we can get medical records asap.
>
> Are you able to alert someone within the MDOC?"

Plaintiff's Brief filed July 15, 2009 in Opposition to Berghuis's Motion for Judgment on the Pleadings ("P's Opp)"), Exhibit ("Ex") B at 1.

Less than three hours later that same day, at 10:50 a.m. (Monday, September 10), the AFSC's Ryder forwarded the e-mail to defendants Pramstaller, Martin, and Straub at their office e-mail addresses, entitling her e-mail "Jones 313552" and adding, "Please check on this man to see if his needs are being met. This is all I know at this time." P's Opp, Ex B at 1. *See also* Comp ¶ 38 (describing Ryder's September 10 e-mail to these defendants as "notif[ying them] . . . of Raymond Jones's serious medical need, providing them actual and subjective knowledge of Mr. Jones' symptoms, e.g. losing control of his muscles, eyes rolling back in his head and confinement to wheelchair based on inability to walk.").

About three hours later, at 2:03 p.m., defendant Nancy Martin, MDOC's Coordinator of Health Care Services Risk Management, responded to the AFSC's Ryder as follows:

> Penny,
>
> Mr. Jones recently brought health concerns to the attention of health care staff at the facility. They are not as dramatic or as described below [sic]. He is being seen and is being treated. I will continue to follow this case.

P's Opp, Ex B at 2; *see also* Comp ¶ 39. Martin simultaneously sent electronic copies (known as

"cc") to defendants health care director Pramstaller, warden Berghuis, and deputy director Straub. *See* P's Opp, Ex B at 2. At the time that defendant Martin sent her email stating that Jones was "being seen and is being treated", Jones had never been examined by a medical doctor in the *two weeks* since he began communicating these increasingly-serious complaints on August 28. *See* Comp ¶ 33.

According to Ms. Ryder's affidavit, she did not receive any response wherein defendants Berghuis, Straub or Pramstaller offered to intervene on behalf of Jones. *See* P's Opp, Ex 5. Ryder states that she did not hear from defendant Martin again until September 26, 2007, when Martin sent an e-mail indicating that Jones was alive, even though "O.T.I.S.",a database or search function available on the MDOC website, indicated that he was dead. *See* P's Opp, Ex 5.

On Tuesday, September 11, *after fourteen days of reporting worsening symptoms to the defendant nurses and repeatedly requesting more medical care – and one day after defendants Pramstaller, Martin and Straub were informed of Jones' apparent condition by the AFSC's Ryder – Jones was seen by a medical doctor for the first time.* The doctor ordered Jones immediately transferred to the emergency room ("ER") for further examination by physicians. *See* Comp ¶ 33. When Jones returned from the ER, Nurse Van Arsdale allegedly failed to administer the medication prescribed by the ER physician, as evidenced by the absence of a note of administration in the record. Comp ¶ 34

On September 12, Dr. Abdellatif, M.D., returned Jones to the ER and then ordered him admitted to Hackley Hospital, where for the first time Jones was diagnosed with meningoencephalitis, Comp ¶¶ 35-36. The National Institutes of Health ("NIH")'s National Institute of Neurological Disorders and Stroke explains that

> [m]eningitis and encephalitis are inflammatory diseases of the membranes that surround the brain and spinal cord and are caused by bacterial or viral infections. Viral meningitis is sometimes called aseptic meningitis to indicate it is not the result of bacterial infection and cannot be treated with antibiotics.
>
> *Symptoms of encephalitis include* sudden fever, headache, vomiting, *heightened sensitivity to light*, stiff neck and back, confusion and impaired judgment, drowsiness, weak muscles, *a clumsy and unsteady gait*, and irritability.
>
> Symptoms that might require emergency treatment include loss of consciousness, seizures, muscle weakness, or sudden severe dementia. Symptoms of meningitis, which may appear suddenly, often include high fever, severe and persistent headache, stiff neck, nausea, and vomiting. Changes in behavior such as confusion, sleepiness, and difficulty waking up may also occur. In infants, * * *
>
> Viral meningitis usually resolves in 10 days or less, but other types of meningitis can be deadly if not treated promptly. *Anyone experiencing symptoms of meningitis or encephalitis should see a doctor immediately.*

http://www.ninds.nih.gov/disorders/encephalitis_meningitis/encephalitis_meningitis.htm, retrieved December 2, 2009 (paragraph breaks added, emphasis added). *See also Erzal v. HHS*, 1992 WL 330118, *6 (Ct. Cl. Oct. 22, 1992) (citing neurologist Kinsbourne's testimony that meningoencephalitis can cause seizures, and neurologist Brill's testimony that an elevated white blood cell count is hard evidence of meningoencephalitis). Another source reports that

> [t]here are nearly 3,000 cases of meningococcal disease every year in the U.S. According to the Centers for Disease Control and Prevention (CDC), between 10-12 percent of the cases are fatal (about 300 to 360). Among those who survive meningococcal disease, approximately 20 percent suffer long-term consequences, such as brain damage, kidney disease, hearing loss or limb amputations.

Website of the National Meningitis Association, http://www.nmaus.org/meningitis/, retrieved on December 2, 2009.

Jones received unspecified treatment for meningoencephalitis from September 12 onward, but he died thirteen days later, on September 25. Comp ¶ 36.

-10-

**The defendants argue as follows in support of their motion for judgment on the pleadings as to the Eighth Amendment deliberate-indifference and training claims:**

A conditions-of-confinement claim under the Eighth Amendment must establish both an objective and a subjective component. The objective component requires a plaintiff to show that the alleged deprivation was "sufficiently serious." The subjective component requires a plaintiff to show that the prison officials had "a sufficiently culpable state of mind."

Defendants will concede for the purpose of this motion only that Plaintiff has established the objective component. Nevertheless, Plaintiff's action should be dismissed because she has failed to establish the subjective component.

The subjective element in a conditions-of-confinement case is "deliberate indifference." Under the deliberate indifference standard, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." To meet this high standard, Plaintiff is required to show that Defendants Straub, Berghuis, Pramstaller, and Martin acted "recklessly,," "knowingly and unreasonably disregarding an objectively intolerable risk of harm." This standard requires more than proof of mere negligence or even "gross negligence." Deliberate indifference can be equated with "subjective recklessness" as used in criminal law. Furthermore, actual knowledge of harm is required. An "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [actually] draw the inference."

Although Plaintiff alleges that Defendants Straub, Berghuis, Pramstaller, and Martin "had specific and actual knowledge of plaintiff decedent's serious medical need," (Complaint ¶¶ 11-14), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." In this case, Plaintiff alleges that the requisite notice was provided to Defendants Straub, Berghuis, Pramstaller, and Martin on September 10, 2007 by Penny Ryder of the American Friends Service Committee, via e-mail. (Complaint ¶¶ 38-39). But this "notice" came late in the series of events. (Complaint ¶¶ 24-32) (August 29 - September 9). On September 11, the very next day, Jones was taken to the emergency room, and on September 12 he was admitted to Hackley Hospital. Jones died on September 25, nearly two weeks later. (Complaint ¶¶ 33-36). On these facts, it cannot be said that Defendants Straub, Berghuis, Pramstaller, and Martin deliberately disregarded Jones' medical needs.

Defs' MTD at 4-5 (citation footnotes omitted).

**Plaintiff Jones responds as follows, in support of her Eighth Amendment deliberate-indifference claims:**

A prison official acts with deliberate indifference when he denies or delays a prisoner's access to medical care. *Farmer*, [511 U.S.] at 832-33, 835; *Estelle*, [429 U.S. at] 103-104; *Scicluna v. Wells*, 345 F.3d 441, 447 (6th Cir. 2003). Although a plaintiff bears the onerous burden of proving the official's subjective knowledge, this element is subject to proof in "the usual ways." *Farmer*, 511 U.S. at 842. Thus, it is permissible for reviewing courts to infer from circumstantial evidence that an official had the requisite knowledge, and an official may not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist. *Farmer*, 511 U.S. at 842-43, n.8.

In other words, "prison officials may be held liable for failure to remedy a risk of harm so obvious and substantial that the prison officials *must have known* about it." *Id.* [*Farmer*, 511 U.S.] at 858 (emphasis added). Lack of an actual knowledge of harm on the part of a defendant is not a defense if the facts are such that the defendant *should have known* his actions would deprive plaintiff of his constitutional rights. *Weeks v. Chabowdy*, 984 F.2d 185, 187 (6th Cir. 1993).

In *Blackmore v[.] Kalamazoo C[ty.]*, 390 F.3d 890, 899-900 (6th Cir. 2004) the court held as follows:

To the extent [that] our previous opinions would benefit from clarification, we hold today that where a plaintiff's claims arise from an injury or illness "so obvious that even a layperson would easily recognize the necessity for a doctor's attention, *Gaudreault*, 923 F.3d at 208, the plaintiff need not present verifying medical evidence that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated.

Defendants' assertion in the case at bar, that "[defendants'] 'notice' came late in the series of events," since he was taken to the hospital the next day and died two weeks later, is without legal significance according to the holding in *Blackmore*, *supra*. (Defendants' Brief p. 5

First of all, whether or not defendants did anything upon receipt of objective knowledge of Jones' serious medical need is a genuine issue of fact not subject to judgment on the pleadings under Rule 12(c). Defendants cannot exculpate [sic, escape] liability for their inaction by seeking judgment on the pleadings based simply

on an alleged temporal proximity [between their receipt of the September 10, 2007 e-mail and] Jones' ultimate care [i.e., his examination by a doctor the following day].

Second, the veracity of defendant Martin['s] e-mail response to prisoner advocate Penny Ryder is a genuine issue of fact not subject to judgment on the pleadings. Martin's e-mail response belies the medical record when Martin erroneously states that Jones' "[health concerns] are not as dramatic or as described below," creating a false sense of security, effectively eliminating any further intervention on behalf of [Jones by] prisoner advocate Penny Ryder.  (See Exhibit 5 [Ryder Aff.]).

Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need [are] relevant in determining what type of delay is constitutionally intolerable.  *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990)[;] *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994) (four-hour delay could constitute deliberate indifference[)]. [*See*] Also, *McElligott v. Foley*, 182 F.3d 1288 (11th Cir. 1999) (delay of a few hours can be deliberate indifference).

In the case at bar, it is a genuine issue of fact whether or not defendants acted within a "reasonable time frame," (*Blackmore, supra* p. 899-900) or whether they delayed Jones' treatment by not acting at all, once they had objective knowledge of plaintiff's serious medical need.

In the case at bar, defendants concede that plaintiff satisfies the objective component regarding . . . plaintiff's serious medical need.  (Defendants['] Brief p. 4) plaintiff's Complaint set forth fact specific allegations regarding defendants' subjective knowledge which satisfies the constitutional standard and is consistent with clearly established federal case law.  Plaintiff's Complaint paragraphs 11-14 state allegations against the named defendants as follows:

11-14    That Defendant Douglas Straub . . . Deputy Director of the [MDOC] Correctional Facilities Administration . . . at relevant times had specific and actual knowledge of plaintiff decedent's serious medical need, so obvious that even a layperson would recognize the need for a doctor's attention, yet despite said actual knowledge that plaintiff inmate faced a substantial risk of serious harm, disregarded the risk of harm, by failing to take reasonable measures to abate it, amounting to a deliberate indifference to serious medical need in violation of federal law and resulting in the death of plaintiff-decedent, Raymond Jones.  (Emphasis added)

37.    That on or about September 10, 2007, fellow inmates contacted family members outside of the prison in order to obtain necessary medical attention

unlawfully delayed and/or denied to Raymond Jones, whose condition was rapidly deteriorating.

38.    That on September 10, 2007, Penny Ryder . . . notified defendants . . . by electronic mail of Raymond Jones' serious medical need, providing them actual and subjective knowledge of Mr. Jones' symptoms, e.g. losing control of his muscles, eyes rolling back in his head and confinement to wheelchair based upon inability to walk[.]

39.    That on September 10, 2007, defendant Nancy Martin advised Penny Ryder by electronic mail with electronic copy to defendant Warden Mary Berghuis, that Raymond Jones' health concerns are "not as dramatic or as described . . ." [by Penny Ryder]."

40.    That despite actual and subjective knowledge of Raymond Jones' serious medical need[,] defendants . . . were at all relevant times deliberately indifferent to the serious medical need of Raymond Jones, and plaintiff's clearly established right to adequate and timely medical attention and without unnecessary delay.

41.    That during this period, the defendants ignored and/or disregarded and/or callously refrained from addressing, treating or even diagnosing decedent's medical condition[,] withholding reasonable, necessary and timely medical attention from qualified medical professionals which was necessary to preserve plaintiff decedent's life.

Contrary to defendants' stated position, plaintiff's Complaint alleges nonfeasance based upon individual liability for direct involvement in Jones' car and not supervisory liability premised upon *Respondeat Superior*.

Plaintiff's allegations fit precisely the law as set forth by *Blackmore*, *supra* and the Supreme Court in *Farmer v. Brennan*, 511 US 825, 842 (1994), which stated as follows:

> Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

> Footnote 8 p. 343

> 8.   While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, *see infra* at 844, 128

-14-

L Ed 2d, at 830, *he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.* (Emphasis added)

Viewing the allegations of plaintiff's complaint in the light most favorable to plaintiff, as nonmoving party, plaintiff has stated a claim against defendants for which relief can be granted. Therefore, defendants' motion must be denied.

P's Opp at 10-14 (some paragraph breaks added); *see also* P's Opp, Ex E (Ryder Aff) ("[I]n reliance on Nancy Martin's e-mail response, I took no further action to intervene on behalf of Raymond Jones, believing that the highest levels of authority were involved in the direct care of Raymond Jones.").

**Based on the information which the plaintiff Ms. Jones had (and reasonably could have had) when she filed the complaint, she alleged enough to satisfy the *Twombley / Erickson* standard as to defendants Pramstaller and Martin. The allegations of counts one and two state a claim upon which Eighth Amendment relief could be granted as to Pramstaller.** As an experienced medical doctor, Pramstaller arguably should have realized the likely gravity and urgency of the decedent's condition – and ordered the decedent's immediate examination by a medical doctor – when he read Ryder's 10:50 a.m. Monday, September 10 e-mail (P's Opp, Ex B at 1, and Comp ¶ 38) conveying the report that the decedent had lost control of his muscles, could not walk, and had his eyes rolling back in his head involuntarily. Even the one-day delay in medical doctor Pramstaller ordering the decedent examined could constitute subjective deliberate indifference in the very extreme factual context presented here.

**Equally or more so the complaint provides sufficiently specific allegations corresponding to the elements of the Eighth Amendment claims, and thereby stating a claim on which relief could be granted thereunder, against defendant Martin.** At the time when

-15-

Martin assured Ryder that the decedent "is being seen and is being treated" – 2:03 p.m. on Monday, September 10 – in fact he had *never* been and *still* was not being seen and treated by a medical doctor. Moreover, the complaint and the record as it stands thus far contain no evidence that Martin had been told or had reason to believe (when she emailed Ryder) that the decedent had ever been examined by an M.D. in response to these reported symptoms and complaints. The allegations state a claim that based on the report available to her, Eighth Amendment precedent required Martin to take steps which would have led her to discover the ongoing lack of M.D. examination, and should have led her to act with far greater dispatch to rectify it (for example, by having the decedent examined by an M.D. *that same afternoon*, rather than waiting overnight while his condition potentially became even more dire).

Given the severity of the alleged symptoms which Ryder reported to Martin by e-mail, Martin's putative failure to ascertain with certainty whether Jones had been seen by a physician (or her failure to ensure that he was seen by a physician *that day*) rather than being left in his cell for even one more day, states a claim for deliberate indifference.

On this record, Jones's complaint states a claim on which relief could be granted that Martin was deliberately indifferent by failing to act promptly after she learned that the decedent was not under the care of a physician (or, as the case may be, after she failed even to investigate to learn *whether* he was under the care of a physician). It is undisputed that when Martin told her superiors (and Ryder) that decedent was being seen by a physician, he was not in fact being seen by a physician, so there was no physician's judgment on which she could rely.[4] *Cf. Havard v. Puntuer*,

---

[4]

And as Ryder suggests, Martin's inaccurate assurance about the decedent being under the care of a physician arguably caused Ryder and others not to pursue the matter further immediately, leaving the decedent even worse off than he was before Martin acted. That could support a finding

600 F. Supp.2d 845, 859 (E.D. Mich. 2009) (Stephen J. Murphy III, J.) (in case where prisoner sued under Eighth Amendment for injury sustained by her baby following birth in prison, court remarked, "the complaint alleges facts that could be construed to constitute deliberate indifference to [infant]'s serious medical needs. The complaint alleges that the infant's mother was in active labor, crying out for help, to the knowledge of the defendants, and was left by the defendants in her cell for two hours; that the paramedics did not arrive until the infant was being delivered and did not have the equipment to resuscitate the child when she was delivered; and that all of this resulted in severe injuries to the infant."); *Dodds v. Wood Mem. Hosp.*, 2007 WL 2463275, *6 and *7 (E.D. Tenn. Aug. 28, 2007) (Susan Lee, M.J.) (denying prison's motion for judgment on the pleadings on prisoner Dodd's Eighth Amendment claim, stating, "Dodd contends [that] from August 5, 2005 until approximately August 25, 2005, he was not given any medication despite making several requests to see a nurse, see a doctor, receive medication, and obtain treatment for his pain. At some unidentified time, Stansbury began giving Dodd ibuprofen, but allegedly not as directed. From October 2005 until February 15, 2006, Dodd allegedly sent over twenty-four request forms to see the doctor, complaining of his increasing pain and the resulting problems with his left side. None of these requests w[as] answered. * * * Since Dodd's allegations state a claim for deliberate indifference to his serious medical needs, he will be permitted to proceed on his medical claims.").

Under the circumstances, the allegations presented satisfy Rule 12(c), even as seemingly strengthened by *Twombley* and *Erickson*, by presenting evidence corresponding to all the elements

---

that Martin was deliberately indifferent because, even if she acted without malice or actual intent, her assurance dissuaded others from pursuing the decedent's access to a physician. *See Rutherford v. Med. Dep't of Dep't of Corrs.*, 76 F. App'x 893, 895 (10th Cir. 2003) ("The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment.").

of the Eighth Amendment claims, including most strikingly the subjective element of HealthCare Risk Coordinator Martin's deliberate indifference to the decedent's concededly serious medical need.

Ultimately, Martin may be able to introduce evidence that will absolve her of liability for an Eighth Amendment deliberate-indifference violation. But the Supreme Court has cautioned that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombley*, 550 U.S. 544, 127 S.Ct. at 1969 n.8.

**In contrast, Jones has not satisfied the *Twombley / Erickson* standard as to the Eighth Amendment claims against warden Berghuis and deputy director of facilities administration Straub.** In the context of the facts alleged by Jones, Nancy Martin's email itself vitiates Eighth Amendment liability for Berghuis and Straub. Here the warden and deputy director receive a written message from their Healthcare Risk Management Coordinator, indicating that she has checked on a prisoner's well-being and assuring them that his medical needs are being addressed. Just as "supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel", *see Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), they are also presumptively entitled to rely on the judgment and representations of other subordinates in the areas in which those subordinates are trained and assigned. Jones has not alleged, nor does the record contain, any facts suggesting that the warden and deputy director had reason not to trust the competence, judgment, fairness, or truthfulness of their healthcare risk coordinator in such matters (either generally or with regard to the decedent in particular).

Absent such additional factual allegations, as a matter of law higher-ranking prison officials

in this situation cannot be deliberately indifferent merely because they presume that an employee more-specifically assigned to monitor prisoner health (Martin) has both done her job and told the truth. Jones presents no authority for the contrary notion that Berghuis and Straub evinced "'deliberateness tantamount to an intent to punish'", *Larson v. US*, 2009 WL 2382371, *8 (E.D. Ky. July 30, 2009) (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)), by merely relying on their qualified subordinate Martin's written assurance that (1) the decedent was already "being seen and is being treated" for the symptoms and complaints in question and (2) the decedent's condition was not as grave as Ryder's email and the incorporated inmate report described.

Necessarily, Berghuis and Straub were also entitled to rely on Martin's implicit assurance that her description of the decedent's condition and treatment was based on adequate investigation, which means an investigation in conformance with ordinary care, common sense, and approved procedures. *Cf. Hughes v. Eitner*, 2007 WL 2597901, *8 (W.D. Pa. Sept. 5, 2007) ("Defendants are not required under pain of Section 1983 liability to believe every accusation . . . that [a prisoner's] constitutional rights are being violated. Rather, prison officials are entitled to rely on the procedures in place for investigating such claims . . . . Prison officials['] discrediting of prisoner complaints in reliance on the results of the methods for investigating such complaints simply does not amount to the personal knowledge requirement [sic].") (citation omitted).

Thus, even accepting Jones's factual allegations as true and construing them in the light most favorable to her, *see Technology Recycling Corp. v. City of Taylor*, 186 F. App'x 624, 640 n.5 (6th Cir. 2006) (Griffin, J.) (stating Rule 12(c) standard), the record does not permit a grant of relief on the claim that warden Berghuis or deputy director Straub acted with deliberate indifference (count

-19-

one).  Nor does the record permit a grant of relief on the claim that warden Berghuis or deputy director Straub failed to promulgate or implement some policy regarding prisoner healthcare, or failed to train subordinates to carry out an appropriate constitutional policy.  Jones has not identified, nor has the court located, any precedent suggesting that the Eighth Amendment requires prison officials to carry out a policy of disregarding and distrusting their subordinates' reports regarding prisoners' medical condition and treatment.

Were the court to rule otherwise, the warden and high-ranking non-medical officials of every prison in Michigan would be categorically unable to rely upon the written representations of their subordinates (and the judgments underlying those representations).  Wardens and other administrative officials would risk potential Eighth Amendment liability whenever they relied on more specialized and medically-oriented subordinates (like healthcare risk management coordinator Martin and healthcare director Pramstaller) to carry out their assigned duties and report up the chain of command.  Wardens and other higher-ranking non-medical officials would, in effect, be constitutionally obligated to disbelieve and distrust the reports of subordinates who from all appearances had followed up on an assertion that a prisoner was in dire straits.  The court is not aware of any Supreme Court or Sixth Circuit decision suggesting that the Eighth Amendment mandates such a chaotic, inefficient state of affairs in our Nation's correctional facilities.  Absent such precedent, Jones's complaint does not "raise [her] right to relief" against Warden Berghuis and Deputy Director Straub on the Eighth Amendment claims "above the speculative level" as required by *Twombley*, 550 U.S. 544, 127 S.Ct. at 1964-65.

All MDOC Officials Except Martin Are Entitled to Judgment on the Pleadings on Gross Negligence

Even assuming the truth and accuracy of all the facts alleged by Jones, the complaint does not permit the grant of relief on her claim that warden Berghuis, deputy director Straub, and healthcare director Pramstaller were grossly negligent or reckless in their handling of the decedent's situation. Simply put, these three officials cannot be the *one* proximate cause of Jones's death, as Michigan's statutory exception to tort immunity requires, because the allegations cannot support the finding that any one or more of them were the *one most immediate, efficient and direct* cause of the decedent's arguable lack of timely adequate treatment, unnecessary suffering and death. The defendant nurses' and Ms. Martin's alleged gross negligence and/or deliberate indifference would seem to be the only candidates for that causal role on the record as it stands now.

**In support of their motion for judgment on the pleadings on the gross-negligence claim, these four higher-ranking MDOC officials argue as follows:**

The final count of plaintiff's complaint is for "gross negligence." Under state law, governmental employees are generally immune from liability for tortious conduct, but MCL 691.1407 carves out an exception to that rule when a state actor's conduct rises to the level of gross negligence. MCL 691.1407 provides in pertinent part:

§ 691.1407. Immunity from tort liability; intentional torts; immunity of judge, legislator, official, and guardian *ad litem*.

\* \* \*

(2)     Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service . . . on behalf of a government agency if all of the following are met:

(a)     The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b)     The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c)     The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.
>
>            As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Governmental employees are immune from liability for injuries they cause during the course of their employment if they are acting within the scope of their authority, if they are engaged in the discharge of a government function, and if their "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." The only component at issue here is the requirement that an employee's conduct amounts to gross negligence that is "the proximate cause of the injury or damage."

Even assuming, *arguendo*, that Plaintiff's complaint would support a finding that Defendants' conduct was grossly negligent within the meaning of MCL 691.1407, Plaintiff's state law claim must still fail because Defendants' conduct was not *the* proximate cause of Jones' injuries and death.

In *Robinson v. City of Detroit*, the Michigan Supreme Court * * * defined '*the* proximate cause' as 'the one most immediate, efficient, and direct cause preceding an injury, not '*a* proximate cause.'" The phrase "the proximate cause" contemplates *one* cause. The Court went on to conclude that the officers who had pursued fleeing vehicles could not, as a matter of law, be "the proximate cause" of the injuries sustained by the plaintiffs because the "one most immediate, efficient, and direct cause of the plaintiffs' injuries was the reckless conduct of the drivers of the fleeing vehicles."

In this case, the limited involvement of Defendants Straub, Berghuis, Pramstaller, and Martin could not possibly be construed as being *the* proximate cause of the harm caused to Jones. These Defendants were not the "one most immediate, efficient, and direct cause" of Jones' injuries or death. Consequently, Plaintiff's state law claim for gross negligence against Defendants Straub, Berghuis, Pramstaller, and Martin should be dismissed.

Defs' MTD at 7-8 (some paragraph breaks added).

**In support of her gross-negligence claim against these four defendants, Jones provides only this conclusory cited passage:**

MCL 691.1407 defines gross negligence as "conduct so reckless as to demonstrate

a substantial lack of concern for whether an injury results." Gross negligence has been held to be a failure to perform a manifest duty and *in reckless disregard of the consequences as affecting the life or property of another*. It also implies thoughtless disregard of consequences, without the exertion to avoid them. *McKeever v. Golfsbury Speedway, Inc.*, 57 Mich App 59 (1974). (Emphasis added)

In, [sic] *Thompson v[.] Rochester Community Schools*, Unpublished decision, [2006] WL 3040137 [(]Mich. App. 2006[)] the court recognized that the issue of gross negligence was normally a question of fact for the jury.

> "... [T]he Michigan courts have long recognized that in proving gross negligence, a close or doubtful case 'calls for jury instruction and jury verdict rather than a verdict by order of the court.' *Washington v[.] Jones*, 386 Mich 466, 471 (1971) [(]quoting, *Tien v[.] Barke*, 351 Mich. 276, 283 (1958)[)]; *see also*, *Coon v[.] Williams*, 4 Mich App 325, 333, [sic] (1966) (in a close case, "**[I]t was the jury's prerogative to determine the question of gross negligence**")[ (emphasis added).]
> . . .
> "Although the statutory definition of gross negligence does not require an intent to injure, MCL 691.1407(7)(a), gross negligence suggests almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. **It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge**, [no citation provided] citing *Tarlea* [no citation provided], *supra* at 90. *Thompson* [2006 WL 3040137 at *]11. (Emphasis added)

Defendants in the case at bar, [sic] request judgment on the pleadings although plaintiff's complaint is pled in avoidance of a governmental immunity. Whether or not defendants' actions/inactions are "the proximate cause of the injury or damage," as set forth by defendants as "the only component at issue here," (Defendant Brief p. 8) is indeed a genuine issue of fact, not subject to judgment on the pleadings.

P's Opp at 17-18 (emphasis in original).


MICH. COMP. LAWS section 691.1407, governing immunity from tort liability, provides in

pertinent part:

(2)     Except as otherwise provided in this section, and without regard to the discretionary

or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service . . . on behalf of a government agency if all of the following are met:

 (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

 (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

 (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

  As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Without contradiction from Jones, the court determines that these movants were acting within the scope of their authority as MDOC employees or reasonably believed that they were so acting. Also without contradiction from Jones, the court determines that MDOC's handling of prisoner medical care constituted the exercise or discharge of a governmental function. *See* MICH. COMP. LAWS § 691.1401(f) (defining governmental function as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law"); *Maskery v. Univ. of Michigan Bd. of Regents*, 468 Mich. 609, 614, 664 N.W.2d 165, 167 (Mich. 2003) (Maura Corrigan, J., for the Court) (the term "governmental function" is broadly construed) (citing *Horace v. City of Pontiac*, 456 Mich. 744, 749-50, 575 N.W.2d 762, 764 (Mich. 1998) (Clifford Taylor, J., for the Court)); *Richardson v. Jackson Cty.*, 432 Mich. 377, 385, 443 N.W.2d 105, 108 (Mich. 1989) ("Improper performance of an activity authorized by law is, despite its impropriety, still 'authorized' within the meaning of the *Ross* governmental function test."). Thus, these movants satisfy the first

two statutory criteria for immunity from tort liability, MICH. COMP. LAWS § 691.1407(2)(a) and (b).

Conversely, for purposes of this motion only, the court assumes *arguendo* that Jones's complaint provides allegations which would permit the finding that these MDOC officials were grossly negligent, i.e., that their conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to the decedent, MICH. COMP. LAWS § 691.1407(2), meaning that they could be held liable for common-law gross negligence if not immunized by this Michigan statute (or by federal common-law qualified immunity).

Nonetheless, **Warden Berghuis, Deputy Director Straub, and Healthcare Director Pramstaller are entitled to judgment on the pleadings on the gross-negligence claim, because the allegations of the complaint do not state a claim that their (assumed) gross negligence was "*the* proximate cause" of the decedent's injuries.** In *Robinson v. City of Detroit*, 462 Mich. 439, 462, 613 N.W.2d 307 (Mich. 2000), the Michigan Supreme Court defined "*the* proximate cause", for purposes of this statute, as "*the one* most immediate, efficient, and direct cause preceding an injury, not '*a* proximate cause.'" Emphasis added. In other words, the statute's phrase "the proximate cause" contemplates *one* cause. For example, the *Robinson* Court went on to conclude that the officers who had pursued fleeing vehicles could not, as a matter of law, be "the proximate cause" of the injuries sustained by the plaintiffs because the "one most immediate, efficient, and direct cause of the plaintiffs' injuries was the reckless conduct of the drivers of the fleeing vehicles." *See also Tarlea v. Crabtree*, 687 N.W.2d 333, 340-41, 263 Mich. App. 80, 92-93 (Mich. App. 2004) (P.J. Sawyer, Saad, Bandstra) (public high-school athletic coach had statutory immunity from suit for student-athlete's death due in part to heat stroke, because a contributing cause of the death was the athlete's own decisions to participate in the run and to decline the opportunity to rest); *Hartzell*

*v. City of Warren*, 2005 WL 1106360, *16 (Mich. App. May 10, 2005) (p.c.) (P.J. Talbot, Jansen, Gage) (even if police officer Galasso was grossly negligent in failing to ensure that decedent prisoner had access to his hypertension medicine, the officer was entitled to statutory immunity; "Officer Galasso was not the proximate cause of decedent's injuries as both Dr. . . . and Nurse . . . indicate that the breach of the standard of care by Dr. Bedia and Nurse Cisco was the proximate cause of decedent's death. Officer Galasso's conduct, again assuming gross negligence, while *a* cause of decedent's death . . . was but one cause, and was[,] therefore, not '*the one* most immediate, efficient, and direct cause' as required by Robinson.") (emphasis added).

In contrast, HealthCare Risk Management Coordinator Martin is not entitled to judgment on the pleadings on the gross-negligence claim. The complaint's allegations could permit relief on a claim that Martin's arguable dereliction following her receipt of Ryder's e-mail (and her communication to her superiors and to Ryder of inaccurate information about decedent's condition and treatment by a physician) prevented him from being seen by a physician, while he was already visibly *in extremis* and deteriorating, delaying his examination and treatment by physicians just long enough for him to succumb. Notwithstanding any earlier putative negligence by the MDOC doctors nurses – and because there is no allegation that the personnel who examined, diagnosed and treated decedent from the following day until his death – the complaint's allegations state a claim for which relief could be granted that Martin was "the one most immediate, efficient, and direct cause" of the decedent's death. Accordingly, Martin is not entitled to judgment on the pleadings on Jones's gross-negligence claim, count three.

Having disposed of the MDOC officials' motion for judgment on the pleadings, the court turns now to their alternative motion for summary judgment on the ground of qualified immunity.

Because warden Berghuis and deputy director Straub are being dismissed by judgment on the pleadings on all three claims, the summary-judgment analysis involves only healthcare director Pramstaller and healthcare risk coordinator Martin.

## LEGAL STANDARD:
## QUALIFIED IMMUNITY

"The purpose of the qualified-immunity defense is to protect government officials from undue interference with their duties and from potentially disabling threats of liability." *Pucci v. 19th District Court*, – F.3d –, 2009 WL ------, *__ (6th Cir. Dec. ___, 2009) (C.J. Batchelder, Gibbons, W.D. Mich. C.J. Paul L. Maloney) (citing *Perez v. Oakland Cty.*, 466 F.3d 416, 426 (6th Cir. 2006) and *Vakilan v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). "Under the doctrine, a government employee performing a discretionary function generally is shielded from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pucci*, – F.3d at – (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Moreover, qualified immunity is "'an immunity *from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Scott*, 550 U.S. at ___ n.2, 127 S.Ct. at 1774 n.2 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Once the defendant asserted the defense of qualified immunity, the burden shifted to the plaintiff to show that he is *not* entitled to qualified immunity. *See Pucci*, – F.3d at –, 2009 WL — at *__ (citing *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007)).

To carry this burden, the plaintiff must show that a reasonable person in the position of Berghuis (Warden), Straub (Deputy Director of Correctional Facilities Administration), Pramstaller

(Director of Health Care Services), and Martin (Coordinator of Health Care Services Risk Management) would have known that prisoners' right not to be free from deliberate indifference to known serious medical needs – under U.S. Supreme Court or Sixth Circuit precedent as it stood from August 29, 2007(when Jones first complained to medical staff) through September 25, 2007 (when Jones died from meningoencephalitis after weeks of severe, visible, worsening symptoms) – would be violated by one of the "policy and practice" deficiencies alleged by Jones's complaint.

"Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional, in light of preexisting law, the unlawfulness must be apparent." *Pucci*, – F.3d at – (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999) and *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2005)). "Ordinarily, a Supreme Court or Sixth Circuit [Court of Appeals] decision on point is necessary" to clearly establish the right in the relevant context and defeat qualified immunity. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 367 (6th Cir. 2004) and *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002).[5]

---

[5]

*See Harlow*, 457 U.S. at 818 ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."); *see, e.g., Baldridge-El v. Gundy*, No. 99-2387, 238 F.3d 419, 2000 WL 1721014, *2 (6th Cir. Nov. 8, 2000) (p.c.) (Keith, Boggs, Cole) ("The ECF defendants were entitled to qualified immunity. Baldridge-El's claims arose between June and September 1997. At that time, it was not clearly established that the ADA or the RA applied to prisons. The Supreme Court decision that held that the ADA applied to state prisoners was not decided until June 1998.") (internal citations omitted); *Tate v. United Mgmt. Care, Inc.*, No. 99-6686, 234 F.3d 1270, 2000 WL 1679435, *2 (6th Cir. Oct. 31, 2000) (p.c.) (same holding with regard to decision applying ADA to state prisoners).

*See also, e.g., Reynolds v. City of Anchorage*, 379 F.3d 358, 372 n.2 (6th Cir. 2004) (Moore, J., dissenting o.g.) ("*United States v. Knights* . . . can of course offer [defendant] no help at this stage of the inquiry, as it was decided after the events in question took place . . . .");

*McCurdy v. Montgomery Cty., Ohio*, 240 F.3d 512, 522, 525 (6th Cir. 2001) (Engel, J., dissenting from reversal of order granting qualified immunity) ("There are two problems with the

This means that Jones cannot defeat the qualified-immunity defense with pre-August 28, 2007 precedent "clearly establishing" his general right to be free of deliberate indifference to his known serious medical needs. Rather, "'[a] constitutional right must be clearly established *in a particularized sense*. 'The contours of the right must be sufficiently clear that a reasonable official would understood that what he is doing violates that right.'" *Garrison v. Glentz*, 2005 WL 2155936, *5 (W.D. Mich. Sept. 5, 2005) (Miles, J.) (quoting *Rippy v. Hataway*, 270 F.3d 416, 424 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))). *See also Dever v. Kelly*, 566 F. Supp.2d 703, 715 (S.D. Ohio 2008) ("The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted.") (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

Ultimately, if reasonable officials in the position of these four higher-ranking MDOC officials "could disagree on the issue" of whether their actions – both before and after receiving Ryder's September 10, 2007 e-mail – violated Jones' Eighth Amendment rights in his specific context and circumstances, immunity should be recognized. *See Pucci*, – F.3d at –, 2009 WL -------- at *___ (quoting *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) and citing *Saylor v. Bd. of Ed.*, 118 F.3d 507, 515 (6th Cir. 1997) ( "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." )) (emphasis added).[6] "[T]his accommodation for reasonable error exists

_____

majority's reliance on *Bloch*. First, *Bloch* had not been decided at the time Officer Cole arrested McCurdy.") (citing *Harlow*, 457 U.S. at 818).

[6]

*See, e.g., Salaam v. McKee*, 2008 WL 363598, *5 (W.D. Mich. Feb. 11, 2008) (Maloney, J.) (holding that prison official was entitled to qualified immunity against prisoner's First Amendment

because 'officials should not always err on the side of caution' because they fear being sued." *Modrell v. Hayden*, 636 F. Supp.2d 545, 560 (W.D. Ky. 2009) (Russell, J.) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984))).

**Namely, Jones can defeat qualified immunity by showing that such precedent was violated by these defendants allegedly** failing to train or supervise their medical staff to ensure that they checked on prisoners with sufficient frequency, examined them with sufficient care, and reacted appropriately and with dispatch when a prisoner appeared seriously ill; failing to implement protocols consistent with those of the National Commission on Correctional Health Standards; failing to develop and implement a policy for testing, diagnosing, isolating, and treating inmates with contagious diseases; failing to maintain a clean, hygienic prison with adequate ventilation; and maintaining a policy of treating prisoners who complained of pain or sickness as malingerers undeserving of medical care and withholding such care "unless imminent death is absolutely apparent."

**More specifically on the facts of this case, Jones can defeat the claim of qualified immunity if he shows that under the circumstances alleged, the two remaining MDOC officials** – HealthCare Director Pramstaller and HealthCare Risk Coordinator Martin – should have known that their inaction, arguably-inadequate action, and communications *after receiving Ms. Ryder's e-*

---

freedom-of-religion claim; binding federal case law at the time of the incident did not clearly establish prisoner's specific right to have a religious observance at a certain time of day);

contrast *Wappler v. Brevard*, 2008 WL 4534037 (W.D. Mich. Sept. 30, 2008) (Maloney, C.J.) (holding that prison employee was not entitled to qualified immunity against prisoner's § 1983 claim that employee violated his constitutional right not to have his legal mail opened outside his presence, as that right was established by published Sixth Circuit decisions pre-dating the challenged conduct, notwithstanding later, arguably-contrary *dicta* from Sixth Circuit Court of Appeals).

*mail on the morning of September 10, 2007* violated his right to be free from deliberate indifference to a known serious medical need. In order to prevail on his claims, Jones may need to present specific evidence that these two MDOC officials did not act as promptly or as thoroughly as precedent required reasonable officials in their position to do after they received Ms. Ryder's September 10, 2007 e-mail reporting his dire condition.

For example, did HealthCare Director Pramstaller or HealthCare Risk Coordinator Martin solicit, or have their subordinates solicit, detailed information from the defendant nurses or other medical personnel about their examination and observation of Jones, their description of Jones's symptoms, their impressions about his possible diagnosis and his likely prognosis, and what medications if any they prescribed or administered to him? Significantly, did Pramstaller or Martin actually inquire whether a medical doctor had ever seen Jones? More broadly, did the Brooks facility or MDOC have policies and procedures in place requiring that prisoner complaints, symptoms, or diagnoses of a certain type or severity be communicated to some or all of these officials within a certain time period after the information became available? If so, were these policies and procedures actually followed in general, and did these officials train or arrange for the training of the defendant nurses and other medical staff to follow these policies and procedures? Were any such policies and procedures actually followed *in Jones's case*?

Jones's counsel contends that he can acquire such evidence only through full discovery, which will take more time. Jones's counsel provides the requisite Rule 56(f) affidavit. Counsel's affidavit describes "'with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment.'" *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (Siler, McKeague, D.J. Thomas Ludington) (quoting

*Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (citation to Fed. Cir. omitted))).  Jones's counsel

plausibly explains why he needs more time order to meaningfully oppose these MDOC officials'

claim of qualified immunity against the Eighth Amendment and gross-negligence claims:

> 5.  [T]o date, no discovery has taken place in this case.
>
> 6.  [D]iscovery including, but not limited to, depositions of all defendants, including [warden] Mary Berghuis, George Pramstaller, Nancy Martin and Dennis Straub, will be essential to the prosecution of this case in order to discern what information they received regarding the medical needs of plaintiff decedent Raymond Jones, when they received the information and what actions they took to address the objectively serious medical needs of Raymond Jones.
>
> 7.  Depositions of Penny Ryder and Doug Tjapkes are necessary to establish authenticity and accuracy of e-mail correspondence and information regarding notification of serious medical need to highest level of authority at MDOC and response thereto.
>
> 8.  Discovery of all documentation, including but not limited to electronic mail (e-mail) filing generated by Defendants Martin, Pramstaller, Straub, Berghuis and Prisoner Advocates Doug Tjapkes and Penny Ryder arising out of this loss, in order to establish the extent of defendants' knowledge regarding Raymond Jones['] serious medical need and defendants' response to said information.
>
> 9.  Deposition of Nancy Martin is essential to determine the basis of the information contained within her September 10, 2007 and September 26, 2007 e-mails to Penny Ryder, in order to prosecute plaintiff's deliberate[-]indifference claim and de[feat] any qualified[-]immunity defense.
>
> 10. Discovery of any/all MDOC Policy Directives, Operating Procedures, training material etc. regarding duties of defendant Warden [Berghuis], Medical Director [Pramstaller], Director of Risk Management [Martin] and Deputy Director of MDOC [Straub] regarding intervention of [these officials into?] inmate health care based on information concerning serious medical needs of prison inmates in order to prosecute this claim and defend [defeat] any qualified[-]immunity defense.

Affidavit of Plaintiff's Counsel Kenneth D. Finegood, Esq. executed July 15, 2009 ("Finegood

Aff").

The court recognizes that "questions of qualified immunity should be resolved 'at the earliest possible stage in litigation,' or else the 'driving force' behind the immunity – avoiding unwarranted discovery and other litigation costs – will be defeated." *Everson*, 556 F.3d at 492 (quoting *Pearson v. Callahan*, – U.S. –, –, 129 S.Ct. 808, 815 (2009) (Alito, J., for a unanimous Court)). Nonetheless, Jones has made a strong showing that he needs full discovery in order to have a fair attempt at defeating HealthCare Director Pramstaller and HealthCare Risk Coordinator Martin's assertion of qualified immunity, which is a highly fact-sensitive inquiry on the record as it stands.

## ORDER

The four MDOC officials' FED. R. CIV. P. 12(c) motion for judgment on the pleadings **[doc. # 13-1]** is **DENIED in part and GRANTED in part, as follows**:

-- **The Eighth Amendment claims (counts 1 and 2)** are dismissed, pursuant to FED. R. CIV. P. 12(c), as to <u>Berghuis</u> (warden of Brooks correctional facility) and <u>Straub</u> (deputy director of correctional facilities administration).

-- The defense's FED. R. CIV. P. 12(c) motion is denied as to the Eighth Amendment claims (counts 1 and 2) against <u>Pramsteller</u> (director of health care).

-- The defense's FED. R. CIV. P. 12(c) motion is denied as to the Eighth Amendment claims (counts 1 and 2) against <u>Martin</u> (coordinator of healthcare risk management).

-- **The Gross Negligence / Recklessness claim (count 3)** is dismissed, pursuant to FED. R. CIV. P. 12(c), as to <u>Berghuis, Straub, and Pramsteller</u>.

-- The defense's FED. R. CIV. P. 12(c) motion is denied as to the Gross Negligence / Recklessness claim (count 3) against <u>Martin</u> (coord. of healthcare risk management).

The four MDOC officials' FED. R. CIV. P. 56 motion for summary judgment on the ground of qualified immunity **[doc. # 13-2]** is **DENIED in part and GRANTED in part, as follows**:

-- The defense motion for summary judgment on the ground of qualified immunity is **DENIED without prejudice as moot** as to defendants Berghuis and Straub, because all claims against them were dismissed on other grounds.

– The defense motion for summary judgment on the ground of qualified immunity is

**DENIED without prejudice as premature**, pursuant to FED. R. CIV. P. 56(f), as to defendants Pramsteller (Director of Health Care) and Martin (Coordinator of HealthCare Services Risk Mgmt.).

**Defendants Berghuis and Straub are dismissed from the case.[7]**

All remaining parties **MAY FILE** motions for summary judgment after the completion of discovery, **no earlier than April 1, 2010.[8]**

The portion of this order denying the motion for judgment on the pleadings is <u>not</u> immediately appealable. *See Griffin v. Reznick*, – F. Supp.2d –, 2008 WL 5110528, *10 (W.D. Mich. 2008) (Maloney, C.J.) (citing, *inter alia*, *Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978)).

The portion of this order denying without prejudice the motion for summary judgment due to qualified immunity *may* be appealable on an interlocutory basis. *See Everson*, 556 F.3d at 492 ("[A] district court's decision to hold in abeyance a motion seeking qualified immunity is immediately appealable unless that decision is related to the proper disposition of the motion.").

**IT IS SO ORDERED this 22nd day of December 2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

[7]

As to defendant Pramsteller, only counts 1 and 2 (Eighth Amendment claims) remain.

As to defendant Martin, all three counts remain (Eighth Amendment and gross negligence).

[8]

According to the Case Management Order issued by the Magistrate Judge on August 20, 2009, the final pretrial conference will be held on October 4, 2010, and jury trial will commence with *voir dire* on October 25, 2010. *See* Doc. 28.